UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Shirley Magazine-Ward, | ) | C/A No. 4: 11-2896-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Patrick R. Donahoe, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Shirley Magazine-Ward ("Magazine-Ward" or "Plaintiff"), began working as a Mail Processor/Clerk at the United States Post Office ("USPS") Processing and Distribution Facility "P&DF" in Florence, South Carolina in March 1997. On-the-job injuries she incurred prevent her from performing certain of her job duties. Claiming Defendant improperly has refused to assign her to light/limited duty or otherwise accommodate her disabilities, Plaintiff exhausted her administrative remedies and brought this suit claiming race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; as well as violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117 *et seq.*; Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. No. 110-325, § 8; 122 Stat. 3553 (Sept. 25, 2008); and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq. See* Compl., ECF No. 1. Defendant ("USPS" or "Defendant") disputes Plaintiff's claim and moves for summary judgment. Def.'s Mot. Summ. J., ECF No. 28.

This matter is before the court on Defendant's Motion. Having considered Defendant's Motion and Memorandum in Support, ECF Nos. 28, 28-1, and Plaintiff's Response, ECF No. 36,

the undersigned submits this Report[1] recommending Defendant's Motion be *granted* and Plaintiff's case be dismissed.

I.    Factual Summary

The following facts are either undisputed or are taken in the light most favorable to Plaintiff, to the extent they find support in the record.[2]

1.    Plaintiff held a "bid position" as Mail Processing Clerk at the Florence P&DF from March 1997 until 2011. She explained that her job was to run one of the large "sorting machines," that is, the automated equipment that organizes the envelopes of mail from zip codes into individual routes. Pl. Dep. 23-36, ECF No. 28-2.

2.    The clerks worked in teams of two to load up and push "dog cages" stacked with trays of mail from the break down area to the sorting machines. Once at the machine, one clerk (the "feeder") takes on the task of loading the mail onto the sorting machines, while the other monitors the chutes of mail leaving the machine and then places the sorted mail into trays (the "sweeper"). Plaintiff testified that this is physically demanding work in that a tray of mail could weigh anywhere between 15 and 60 pounds. *Id.*

3.    The USPS's Qualification Standard for the Mail Processing Clerk position sets out the physical requirements of the job as follows:  "Applicants must be physically able to efficiently perform the duties of the position, which require arduous exertion involving prolonged standing, walking, bending, and reaching, and may involve the handling of heavy containers of mail and parcels weighing up to 70 pounds." Qualification Standard, Mail Processing Clerk, ex. 1 to Pl. Dep., ECF No. 28-3.

4.    It is undisputed that Plaintiff's duties were to load and sweep automated equipment that sorts letters and that the position required her to lift, bend, stoop, twist, reach, push and pull equipment. EEO ("Equal Employment Opportunity") Investigative Aff. of Paul Christensen, Admin. Rec. 69-76 at 70, ECF No. 28-3.

5.    As supervisor Sandra Williams explained, the "essential functions of [Plaintiff's] position are being able [to] stand and lift up to 30 lbs frequently. Pushing heavy containers of mail to the machine sometimes weighing over 300 lbs. Bending, stooping and reaching above the shoulders

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28, U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C.  Because this Motion for Summary Judgment is dispositive, this Report and Recommendation is entered for the district judge's consideration.

[2] This numbered list of facts is taken largely from Defendant's Memorandum, ECF No. 28-1, and notes any disagreement with the numbered facts Plaintiff expressed in her Memorandum, ECF No. 36.

frequently while lifting over 20 lbs." EEO Investigative Aff. of Sandra Williams 2, Admin. Rec. 84-88 at 85, ECF No. 28-5.

6.      Plaintiff testified that she injured her shoulder on the job in 2006 and was out on workers compensation for two years. She returned to work in early 2008 and was reinjured in 2009. When she returned to work following the 2009 injury, management gave her a light duty assignment which she held until late 2009. In 2009, she returned to her duties as mail processing clerk; but in 2010, she claimed an exacerbation of the prior injuries and was given a modified job assignment, which allowed her to sit down while manually "casing" or sorting mail. Pl. Dep. 55-61, 63; ECF No. 28-2.

7.      Prior to her injury in 2008, Plaintiff was able to perform her duties as mail processing clerk but in 2010 she recognized that she could not go back to those duties. She wanted the agency to work with her and find some employment for her to do. *Id.* at *75.*

8.      Plaintiff explained that the USPS provides "limited duty" jobs for employees recovering from an on-the-job injury, while "light duty" jobs are for those employees who have been injured off the job. *Id.* at 61, 79.

9.      On September 8, 2010, the United States Department of Labor, Office of Workers Compensation Programs ("DOL"), issued its decision denying Plaintiff's claim for compensation arising out of her July 18, 2010, on the job injury, because the medical evidence she submitted did not include a diagnosis and did not establish that her complaints of pain were causally related to an injury at work. *Id.* at 80-81; Notice of Decision, ex. 5 to Pl. Dep., Admin. Rec. 95-99 at 95-96.

10.     Paul Christensen (a White male) was Plant Manager of the Florence P&DF from 2008-2011.

11.     In January or February 2009, Plaintiff discussed the problems presented by her injuries with Christensen who expressed his opinion that she was taking advantage of the medical situation. She testified that he told her, "I think you [are] doing something out of the ordinary purposely to hurt yourself or something to that respect." Pl. Dep. 55. Plaintiff stated in deposition that Christensen "didn't want to hear anything about [her] injury or what [she was] going through. And he made a statement at the end of the conversation, well, you need to dot your I and cross your T because I'm going to look into this. Something [is] going on and you doing that causing you to do what you doing or causing you to have problems." *Id.* at 56.

   a. Plaintiff argues this conversation "creates a genuine issue of fact as to whether Mr. Christensen (W/M) was motivated by racial animus or other motivations violative of the Rehabilitation Act of 1973." Pl.'s Mem. 3.

12.     According to Defendant, the "situation came to a head on October 13, after Christensen saw Plaintiff and her husband at the FATZ Café in Cheraw on Friday, October 8, 2010." Def.'s Mem. 5, ECF No. 28-1; EEO Dispute Resolution Specialist's ("DRS") Inquiry Rpt. [hereinafter "DRS Rpt."], Admin. Rec. 22-51 at 25, 37, ECF No. 28-7.

a. Plaintiff disagrees that anything "came to a head" on October 13, 2010 after Christensen saw Plaintiff outside a restaurant on October 8. Pl.'s Mem. 3, ECF No. 36. She argues that Christensen's being at the restaurant at all "creates an issue of fact as to whether he was following her in an illegally motivated attempt to 'get the goods' on Plaintiff." *Id.* at 3-4. Plaintiff submits that, "[w]hy [Christensen] cared at all the Plaintiff had eaten at a restaurant suggests a bias or animus that needs to be further explored." *Id.* at 4.

13.    On October 13, 2010, Aldric Hunter, a Black male, was the Acting Supervisor on Tour 3 in Sandra Williams' absence. DRS Rpt. 4, Admin. Rec. 22-51 at 25, ECF No. 28-7; *see also* EEO Investigative Aff. of Aldric M. Hunter, Admin. Rec. 77-81 at 77, ECF No. 28-8.

14.    When Plaintiff went to the P&DF on October 13, 2010, she indicated to management that she had work restrictions. She did not have any medical documentation to support these claims, and Acting Supervisor Hunter asked her to provide medical documentation as to what the restrictions were so the agency could determine if productive necessary work was available for her to perform. Christensen Aff. 3, Admin. Rec. 69-76 at 00071; ECF No. 28-4. *See also* Hunter Aff. 2, Admin. Rec. 77-81 at 78, ECF No. 28-8; and Williams Aff. 3, Admin. Rec. 84-88 at 86, ECF No. 28-5.

a. Plaintiff attempted to give the requested medical documentation to Mr. Christensen. Pl. Dep. 77, ECF No. 28-2.

15.    Although Plaintiff told Hunter that she had work restrictions, she did not provide him with any medical documentation from her doctor to support her request for light duty. As Hunter explained, "Complainant didn't provided [sic] any documentation from her doctor as requested from her, and her supervisor was off [the] day I sent the complainant home. The complainant / no Employee cannot work without that medical documentation on file and requested light duty." Hunter Aff. 2-3, Admin. Rec. 77-81 at 78-79, ECF No. 28-8

16.    Plaintiff also spoke with Christensen on October 13, 2010, and he told her that "I saw you in Cheraw eating at a restaurant. It didn't look like nobody was sick to me." Plaintiff believes Christensen sent her home that day because he had seen her in the restaurant and she did not look sick. Pl. Dep. 77-79, ECF No. 28-3.

17.    Christensen and Hunter sent Plaintiff home. In her initial contact with the EEO Office, Plaintiff explained the situation:

I went to Florence P & DF to bring requested documents to the plant manager secretary office. I was sent home on 10-13-2010 by Mr. Paul Christensen along with Aldric Hunter. He (Paul Christensen) came to me and said I needed to bring documentation for being out on 10-08-2010 (Friday). I responded that I am covered under FMLA (Family Medical Leave Act] for my spouse. He said that I still need to bring an excuse for my absence. He went on and said that he saw me at a restaurant in Cheraw, SC on the night of 10-08-2010 having a good time and that he have [sic] witnesses. He even said that he saw me driving a white Nissan

> Maurano [sic] (with a very loud and boisterous voice). He also told me
> that someone will be calling me. . . .

DRS Rpt. 16, 19, Admin. Rec. 22-51 at 37, 40, ECF No. 28-7. Note: this report includes Plant Manager Christensen's response that the conversation about the restaurant occurred on October 28, 2010, after Plaintiff stated that her husband was incapacitated and that she needed to take care of him. DRS Rpt. 4, Admin. Rec. 25, ECF No. 28-7.

18.     Plaintiff never returned to work after October 13, 2010, when she was asked to provide medical documentation. Christensen Aff. 3, Admin. Rec. 69-76 at 71, ECF No. 28-4.

      a.     Plaintiff indicates that she clocked out on October 13, 2010 after being ordered to do so, received no subsequent instructions on if or when to return and felt uneasy about returning because of the way she had been treated. Pl. Dep. 74-77, ECF No. 28-3.

19.     Plaintiff returned to the Post Office on October 28 to turn in some paperwork. As she was leaving, she stopped to talk to Carolyn Eaton; when Christensen saw her, he approached her and said, "You need to leave the post office NOW; you are not on the clock!" Plaintiff left, going out into the lobby of the post office where there were customers and others transacting business. DRS Rpt. 19, Admin. Rec. 22-51 at 40, ECF No. 28-7.

20.     Plaintiff felt it was wrong for the plant manager to attack her about her private life. She states that, because she felt threatened, she called the Florence, South Carolina Police Department. *Id.* Officer McCall investigated the report and interviewed the witnesses identified by the Plaintiff. According to Officer McCall, the witnesses "all stated [identity redacted in original] told [Plaintiff] to leave but there was no threat of aggression." *Id.* at 30.

      a.     Plaintiff points out that Officer McCall's finding that there was "no threat of aggression" reflects only his opinion and is not dispositive. Pl.'s Mem. 5.

21.     Plaintiff made an initial contact with the EEO counselor on November 15, 2010. She complained that she was unfairly sent off duty and denied work within her restrictions beginning October 13, 2010, that she was issued memoranda requesting that she provide medical documentation and charged LWOP and AWOL between October 13-November 19, 2010, and "she was harassed about her leave usage from October 8, 2010 and on October 28, 2010." She named Plant Manager Paul Christensen and Supervisor Aldric Hunter as the responsible management officials. DRS Rpt. 1, Admin. Rec. 22-51 at 22, ECF No. 28-7.

22.     Supervisor Sandra Williams sent Plaintiff two letters in regard to her continued absence from work on October 22 and November 22, 2010, requesting medical documentation; however Plaintiff did not provide the documentation until December. Christensen Aff. 4, Admin. Rec. 69-76 at 72; ECF No. 28-4.

      a.     Plaintiff points out this "would not seem an unreasonable delay." Pl.'s Mem. 5.

23.     In the letter of October 22, 2010, Williams requested "acceptable medical documentation" and explained that the documents should provide an explanation of the nature of the illness or injury sufficient to indicate that Plaintiff has been and continues to be unable to

perform her duties. The letter warned her that failure to submit the documentation could result in an AWOL ("absent without leave") charge. Oct. 22, 2010 Ltr. from Williams to Pl., Admin. Rec. 99, ECF No. 28-10.

24.    The November 22, 2010, letter notified Plaintiff that she had been charged with LWOP ("leave without pay") and AWOL and instructed her to provide acceptable medical documentation no later than Tuesday, November 30, 2010. The letter warned that continued failure to provide acceptable medical documentation could result in her being placed in an AWOL status and that she could be subject to disciplinary action. Nov. 22, 2010 Ltr. from Williams to Pl., Admin. Rec. 100; ECF No. 28-10.

25.    Plaintiff did not present the requested documentation by November 30, 2010.
   a.    Plaintiff points out that November 30, 2010, "was an arbitrary date and [she] did supply the requested records shortly thereafter." Pl.'s Mem. 5.

26.    Plaintiff's physician, Anthony W. Alexander, signed a Medical Condition Report – Light Duty on December 6, 2010. This report stated that Plaintiff was restricted from "lifting/carrying over 20 lb; avoid frequent neck flexion" from October 27 until approximately December 22, 2010. Med. Condition Rpt., Admin. Rec. 101, ECF No. 28-11.

27.    Dr. Alexander also signed a Certification of Health Care Provider to Employee's Serious Health Condition (Family and Medical Leave Act) on December 6, 2010. When asked to identify the job functions she was unable to perform, Dr. Alexander indicated that she was "Unable to perform all job functions" and that the condition should end on "Appx 12/22/10." Christensen Aff. 2, Admin. Rec. 69-76 at 70, ECF No. 28-4; Certification of Health Care Provider to Employee's Serious Health Condition (Family and Medical Leave Act) 3-4, Admin. Rec. 102-05 at 103-04, ECF No. 28-12.

28.    On December 13, 2010, Dr. Alexander indicated that Plaintiff was "unable to return to work x one month." Pee Dee Orthopaedic form, Admin. Rec. 106, ECF No. 28-13.

29.    Plaintiff never submitted documentation to support her claim that she was entitled to leave under the Family and Medical Leave Act in order to care for her bed-ridden husband on October 8, 2010, the day that Christensen saw them at the Cheraw restaurant.

30.    By memorandum dated January 18, 2011, Christensen notified Plaintiff that her limitations are "limiting" and that the "majority of duties which are performed in the Post Office normally exceed these limitations and could be injurious to you. At the present time, we do not have any duties to offer you that would fall within your physical limitations." Jan. 18, 2011 Mem. from Christensen to Pl., Admin. Rec. 107, ECF No. 28-14.
   a.    Plaintiff agrees Christensen said there were no duties he was able to offer here, but whether there were or not becomes an unresolved issue of fact. Pl.'s Mem. 6.

31.    On February 28, 2011, Christensen again corresponded with Plaintiff, confirming her limitations as "no lifting/carrying over 15 pounds. No repetitive flexion and extension of the neck." He again notified Plaintiff that her limitations are "limiting" and that the "majority of

duties which are performed in the Post Office normally exceed these limitations and could be injurious to you. At the present time, we do not have any duties to offer you that would fall within your physical limitations." Feb. 28, 2011 Mem. from Christensen to Pl., Admin. Rec. 108, ECF No. 28-14.

      a.  Plaintiff agrees Christensen said there were no duties he was able to offer here, but whether there were or not becomes an unresolved issue of fact. Pl.'s Mem. 6.

32.    On March 28, 2011, Christensen again corresponded with Plaintiff, confirming her limitations as "no lifting/carrying over 30 pounds, no pushing/pulling over 30 pounds. She was also limited to 2 hours of kneeling bending, stooping, twisting, and to 4 hours of standing, walking, climbing, driving. He again notified Plaintiff that her limitations are "limiting" and that the "majority of duties which are performed in the Post Office normally exceed these limitations and could be injurious to you. At the present time, we do not have any duties to offer you that would fall within your physical limitations." Mar. 28, 2011 Mem. from Christensen to Pl., Admin. Rec. 117, ECF No. 28-15.

      a.  Plaintiff agrees Christensen said there were no duties he was able to offer here, but whether there were or not becomes an unresolved issue of fact. Pl.'s Mem. 6.

33.    At her deposition, Plaintiff testified that she would not "be able to even take that position as a mail processor. . . . I wouldn't be able to go back to my bid job. I wouldn't be able to do it." Pl. Dep. 109, ECF No. 28-3.

34.    Plaintiff testified there is no accommodation available that would allow her to perform her mail processing duties at the Post Office. When asked, "Can you think of anything that the post office could do so that you could be a good sweeper or a good feeder?" she replied, "No. I would not be able to sit down to do that type of work." *Id.* at 110.

      a.  Plaintiff "disagrees with facts as characterized by Defendant, and does not believe what she said equates to an admission that there were no duties of any kind that she could perform." Pl.'s Mem. 6.

35.    Plaintiff filed a "formal" EEO complaint on February 22, 2011. She complained of discrimination on account of her race, retaliation, and disability in that she had been harassed due to her race and disability and because the agency failed to accommodate her request for light duty, despite having provided proper documentation. EEO Compl. of Discrimination, Admin. Rec. 20-21, ECF No. 28-16.

36.    Plaintiff alleged that she was treated differently from Mary Ann Silva (W/F), Robert Davis (B/M), and Quincy Singletary (B/M).

37.    Christensen stated that he approved the request of Quincy Singletary, Black male, for light duty. Sept. 29, 2010 Temporary Light Duty Assignment, Admin. Rec. 120, ECF No. 28-17. He explained that Singletary requested light duty on August 27, 2010. Singletary's condition was temporary due to surgery, he was able to be a productive employee during the light duty assignment, and he only requested light duty for two months, through October 26, 2010. *Id.*; Christensen Aff. 4-5, Admin. Rec. 69-76 at 72-73, ECF No. 28-4.

38.    Christensen denied the request of James Treadway, White male, for light duty. Christensen explained that he denied this request because there was no available work for Treadway that was within his restrictions. Req. for Light Duty – Denied, Admin. Rec. 117, ECF No. 28-18; Christensen Aff. 4, Admin. Rec. 69-76 at 72, ECF No. 28-4.

    a.  Plaintiff agrees that Christensen did say there were no duties he was able to offer here, but whether there were or not becomes an unresolved issue of fact. Pl.'s Mem. 6.

39.    Two other employees identified by Plaintiff as similarly situated, Mary Ann Silva (White female) and Robert Davis (Black male), never requested light duty. Christensen Aff., Admin. Rec. 69-76 at 73, ECF No. 28-4. Ms. Silva and Mr. Davis were both allowed advance annual leave and earned sick leave for their illnesses. Notification of Personnel Action, Admin. Rec. 121-24, ECF No. 28-19.

40.    On March 14, 2011, the National EEO Investigative Services Office of USPS notified Plaintiff that the claim that she was sent home and not provided light duty on October 13, 2010, was accepted for investigation. The remaining claim, that "On unspecified dates [she was] subjected to workplace harassment" was dismissed for failure to state a claim in accordance with 29 C.F.R. 1614.107 (a)(1). National EEO Investigative Services Office, Partial Acceptance/Partial Dismissal of Formal EEO Compl., Admin. Rec. 52-57, ECF No. 28-20. Plaintiff did not appeal the determination.

41.    Although Plaintiff had filed numerous previous EEO complaints, Christensen stated that he was unaware of her previous EEO activity. Christensen Aff. 3, Admin. Rec. 69-76 at 71, ECF No. 28-4. Plaintiff testified at deposition that when she came back to work in January 2009 Christensen told her "he was aware of my prior EEO activities or something to that effect." Pl. Dep. 82-83.

II.    Discussion

A.  Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions,

8

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

    B.  Plaintiff's Title VII Causes of Action

        a.   Title VII Race Discrimination Claim

A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Scant case law exists regarding a Title VII claim of discrimination based on the denial of a light-duty request. Plaintiff and Defendant concur that the test set forth in *Hoyle v. Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011), offers guidance. Def.'s Mem. 14-15, Pl.'s Mem.

7-8. In considering a claim for discriminatory discharge brought under Title VII,[3] the court set forth the following:

> To succeed on a discriminatory discharge claim, a plaintiff must demonstrate, under the burden-shifting approach applicable here, that: (1) she is a member of a protected class under Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to those employees outside the protected class.

650 F.3d at 336. Mindful that the exact standard to be used in establishing a prima facie case is flexible depending on the facts and claims alleged, *Ennis*, 53 F.3d at 58, the undersigned uses the *Hoyle v. Freightliner* rubric as a guide.[4]

As Defendant notes, an essential element of any prima facie case alleging disparate treatment is identifying an employee outside of the plaintiff's protected class who was otherwise comparable to the plaintiff and who received more favorable treatment than the plaintiff.

In forms submitted to the Equal Employment Opportunity Commission ("EEOC"), Plaintiff identified Silva, Davis, and Singletary as employees who were treated differently from her in similar situations. DRS Rpt. 2, Admin. Rec. 39, ECF No. 28-7. Plaintiff indicated that Silva, a White female was "out for an on-the-job-injury covered under FMLA" and that she was "[a]lways out before and after holidays." *Id.* Plaintiff questioned whether "the plant manager

---

[3] Litigants may also bring disparate treatment discrimination claims pursuant to the Rehabilitation Act, although Plaintiff brings hers under Title VII only. Disparate treatment claims brought under the Rehabilitation Act that rely on indirect evidence also employ a burden-shifting framework. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (noting disparate-treatment claims brought pursuant to the ADA (and, by extension, the Rehabilitation Act) employ burden-shifting analysis). In a Rehabilitation Act disparate treatment claim, as with a Rehabilitation Act failure-to-accommodate claim, the first prong of a plaintiff's prima facie claim is to "establish that he was a qualified individual with a 'disability' within the meaning of the Act." *Cochran v. Holder*, 436 F. App'x 227, 231 n.3 (4th Cir. June 21, 2011). Whether Plaintiff has established she is a qualified individual with a disability under her Rehabilitation Act claim is discussed below.

[4] Plaintiff offers no direct evidence of discrimination and agrees she is proceeding under the burden-shifting framework applicable to indirect-evidence claims. Pl.'s Mem. 7, ECF No. 36.

11

request[ed] documentation for her absence from work when covered by FMLA[.]" *Id.* Plaintiff indicated Silva "[came in] to case letters in manual letters and sit down more than she works on her assigned machine in automation, clear case of disparity." *Id.* Plaintiff's explanation for why Davis, a Black male, was a comparator was similar, noting he had been out of work for an on-the-job injury covered by FMLA, was "[a]lways out before and after holidays[,]" and questioning whether he was required to provide documentation for being out of work. *Id.* Plaintiff notes that Singletary, a Black male, was out of work for "9-10 months" for an on-the-job injury and was placed on light duty when he returned to work. *Id.* She submits that "[a]ccommodations were easily made for him." *Id.*

Defendant submits Plaintiff cannot establish her prima facie case because the comparators Plaintiff identified were not similarly situated. Def.'s Mem. 15-16. Defendant proffers evidence regarding Silva, Davis, and Singletary and why they are not similarly situated to Plaintiff. Def.'s Mem. 15. Quincy Singletary, a Black male, was placed on light duty for two months, from August 27 through October 26, 2010. He was not similarly situated because his restrictions were temporary, whereas Plaintiff's restrictions were not. Christensen Aff. 5, Admin. Rec. 73, ECF No. 28-4; Sept. 29, 2010 Mem. to Singletary from Christensen regarding "Temporary Light Duty Assignment," Admin. Rec. 120, ECF No. 28-17.

Defendant explains that the two other individuals identified by Plaintiff as similarly situated—White female Silva and Black male Davis—never requested light duty. Christensen Aff. 5, Admin. Rec. 73, ECF No. 28-4. Rather, Silva and Davis were allowed advance annual leave and earned sick leave for their illnesses. *Id.*; Notification of Personnel Action, Admin. Rec. 121-24, ECF No. 28-19.

Additionally, Defendant identified James Treadway, a White male whose request for light duty was denied by Christensen because there was no available work he could perform within his work restrictions. Christensen Aff. 4, Admin. Rec. 00072, ECF No. 28-4; Mar. 28, 2011 Mem. to Treadway from Christensen regarding "Request for Light Duty Assignment – Denied," Admin. Rec. 117, ECF No. 28-18.

Here, Plaintiff indicates her disparate treatment claim is that she was discriminated on the basis of race for having been "denied light duty following [an] injury while other employees were provided light duty assignments." Pl.'s Mem. 7. She acknowledges she has no direct evidence and must proceed under the burden-shifting scheme. *Id.* However, in response to Defendant's specific arguments that she has not set forth her prima facie case because she has not identified appropriate comparators, Plaintiff simply argues that she "has stated her prima facie case as the comparators Defendant cites are too few or dissimilar for a meaningful comparison." *Id.* at 8. This argument ignores the fundamental premise that it is up to Plaintiff, not Defendant, to set forth a prima facie case. *See Hoyle*, 650 F.3d at 337 (finding plaintiff's disparate treatment claim failed as matter of law because he did not identify similarly situated employees who were treated more favorably).

As an initial matter, Plaintiff did not identify purported comparators Silva and Davis to the EEOC as having been denied light duty. *See* DRS Rpt. 2, Admin. Rec. 39, ECF No. 28-7. Further, Defendant has presented evidence that neither Silva nor Davis requested light duty. Plaintiff has not disputed this evidence. The only potential comparator, then, is Singletary. Although there is evidence that Singletary was placed on light duty for a time after returning from an injury, Defendant has provided uncontroverted evidence that Singletary's request for light duty was temporary and had a defined end-date. Sept. 29, 2010 Ltr. from Christensen to

Singletary, Admin. Rec., 120, ECF No. 28-17. Further, Defendant provided evidence that Singletary's restrictions permitted him to perform more duties than Plaintiff was able to perform. Christensen Aff. 5, Admin. Rec. 73, ECF No. 28-4. Additionally, Plaintiff, Singletary, and Davis are all African American. Comparators must be from outside the protected class to which Plaintiff belongs. *See Hoyle*, 650 F.3d at 336 (comparator must be from outside protected class to which plaintiff belongs).

Based on the evidence of record, the undersigned is of the opinion that Plaintiff has not set forth a prima facie case of disparate treatment based on race. She has not identified similarly situated employees whom Defendant treated differently in requests for accommodations of light/limited duty after injury. Because Plaintiff has not established her prima facie case for disparate treatment under Title VII, the undersigned need not consider this cause of action further. The undersigned recommends Defendant be granted summary judgment as to Plaintiff's first cause of action.

b.  Title VII Retaliation Claim

Plaintiff also claims a Title VII violation for retaliatory discharge. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Absent direct evidence proof of retaliation, in order to establish a prima facie case for retaliation under Title VII, a plaintiff must show the following: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Matvia v. Bald Head Island*

*Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2011) (internal quotation omitted).  If Plaintiff is able to establish a prima facie case for retaliation, Defendant can rebut the presumption by articulating a legitimate non-retaliatory reason for its action.  Discussing a defendant's burden, the court has explained: "What shifts is merely a burden of producing admissible evidence (something more than a pleading) that would, if believed, be legally sufficient to justify a judgment for the defendant."  *Taylor v. Ingles Markets*, C.A. No. 802407227, 2004 WL 3591133, *5 (D.S.C. Dec. 13, 2004) (citing *Burdine*, 450 U.S. at 255). The employer, however, does not have the burden of persuading the court that it was actually motivated by the proffered reason. *Id.* "The employer's burden is satisfied if he simply 'explains what he had done' or 'produce[es] evidence of legitimate, nondiscriminatory reasons.'" *Williams v. Sonoco Prods. Co.*, C.A. No. 81-1469-0, 1982 WL 423, at *3 (D.S.C. Nov. 8, 1982) (citing *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 25 (1978)).  A plaintiff bears the final burden of proving that the reason given by a defendant is a pretext for unlawful retaliation. *Reeves*, 530 U.S. 133.   In *Reeves*, the Supreme Court clarified a plaintiff's burden to show pretext once the employer articulates a legitimate reason for its adverse action. The Court held that a plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence. *Reeves*, 530 U.S. at 143.  "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Reeves*, 50 U.S. at 146 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)). "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's

explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.

An employee engages in protected activity when he opposes discriminatory practices in the workplace or participates in an investigation, proceeding or hearing under Title VII. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* Title VII's anti-retaliation provision not only protects activity in opposition to employment actions actually unlawful under Title VII, but also employment actions an employee reasonably believes to be unlawful. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-07 (4th Cir. 2005). The court considers whether Plaintiff has established a prima facie claim of retaliation by examining each element.

Here, Plaintiff alleges that, after filing a grievance "claiming among other things, her opposition to race discrimination, she began to be treated even more differently making the performance of her duties more difficult, clearly resulting in her not being able to work for approximately one year[.]" Compl. ¶ 16. She submits this "constitutes unlawful retaliation against her" in violation of Title VII. *Id.*

For purposes of its Motion, Defendant does not dispute that Plaintiff has put forth a prima facie case of discrimination. Def.'s Mem. 17. However, Defendant claims it is entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for denial of light duty—that there was no accommodation that would permit her to perform the duties of her job as Mail Processor/Clerk and there was no available job she could perform within the limitations set forth by her medical providers. *Id. See* Christensen Aff. 3, Admin. Rec. 71, ECF

16

No. 28-4 (indicating documentation Plaintiff provided in December 2010 indicated it was "impossible for her to perform her bid position on automation or any necessary productive work").

In response, Plaintiff simply submits that Defendant is not entitled to summary judgment because "whether [Defendant] has articulated a legitimate, non-discriminatory reason for the denial of light duty remains an open question[.]" Pl.'s Mem. 9. The gist of Plaintiff's argument seems to be that there is a "dispositive open fact" regarding "whether there were or were not duties available" that Plaintiff could perform. *Id.* at 8. Plaintiff argues that the court should not "accept Christensen at his word[]" that there were no available light duties Plaintiff could perform. *Id.*

This argument misses the mark. Unlike some civil disputes, in which *any* genuine issue of material fact may be sufficient to defeat summary judgment, *see Anderson*, 477 U.S. at 249, Plaintiff's retaliation claim is considered based on the burden-shifting framework set forth above. Defendant has unquestionably set forth a legitimate, non-discriminatory reason for not assigning Plaintiff to light duty. Accordingly, the burden is shifted back to Plaintiff to show that Defendant's proffered explanation is pretextual. Plaintiff must do more than baldly argue it is an "open question" regarding whether "duties" existed that Plaintiff could perform. *See Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2005) (noting if a plaintiff puts forth a prima facie case of retaliatory discharge, defendant must offer a nondiscriminatory explanation for the termination and then the burden of proof returns to plaintiff to show the employer's proffered explanation is pretextual). The undersigned finds Plaintiff has not done so.

"Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies

that do not cast doubt on the explanations' validity. . . ." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006).  "[I]t is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299.  Plaintiff cannot show Defendant's stated reason was not the reason she has been denied light duty. She has not proffered evidence to rebut Christensen's documented testimony that there were no jobs Plaintiff could perform on a permanent, full-time basis that would accommodate her. The only evidence Plaintiff has presented regarding the existence of light-duty positions that she could perform is her focus on Singletary as a comparator. As discussed above, Defendant has demonstrated Singletary's assignment to light duty was for a limited, closed-end time period and that Singletary was able to perform more that Plaintiff. Christensen Aff. 5, Admin. Tr. 73, ECF No. 28-4; Sept. 29, 2010 Ltr. from Christensen to Singletary, Admin. Rec. 120, ECF No. 28-17. Plaintiff has not presented evidence to rebut Defendant's position that there were no jobs available that she could perform on light/limited duty.

Even if Plaintiff could demonstrate by a preponderance of the evidence that Defendant's stated reason was untrue, the ultimate question is whether Defendant unlawfully retaliated against Plaintiff. *See Reeves*, 530 U.S. at 146.  "It is not enough to disbelieve the [employer]." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation" of why she was denied light duty. *Id.* Here, Plaintiff's explanation of why she was denied light duty seems simply to be because "of her opposition to race discrimination." Pl.'s Mem. 8. Her focus on questioning the veracity of Christensen's statements that Defendant did not have a light-duty position to which Plaintiff could be moved is misplaced.

Plaintiff has insufficient evidence to show Defendant's articulated reason for her not being assigned to light duty pretextual. Because she cannot carry the requisite burden of proof in this regard, Plaintiff's cause of action for retaliatory discharge should fail.

C.  ADA, ADAAA, Rehabilitation Act Claims

Although Plaintiff alleges violations of the ADA, ADAAA, and the Rehabilitation Act, the United States is specifically excluded from the ADA's definition of employer, and, thus, a claim under the ADA or the ADAAA will not stand against the United States. 42 U.S.C. §§ 12111(2), 12111(5)(B); *Cassity v. Geren*, 749 F. Supp. 2d 380, 384 (2010). Rather, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, provides the exclusive judicial remedy for claims based upon a federal employee's disability. *Id.* (citing *McGuinness v. U. S. Postal Serv.*, 744 F.2d 1318, 1322-23 (7th Cir. 1984); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir.1985)). The Rehabilitation Act prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Because the Rehabilitation Act and the ADA employ the same standards and purposes, courts may rely on case law addressing claims under either statute in analyzing a case of disability discrimination. *Smaw v. Commonwealth of Va. Dept. of State Police*, 862 F. Supp. 1469, 1474 (E.D. Va. 1994) ("By design, the ADA standards mirror those of the Rehabilitation Act in this case. . . . The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The ADA defines "disability" "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Major life activities include sleeping, walking, standing, lifting, bending, and working, *inter alia*. 42 U.S.C. § 12102(2). After the recent amendments to the ADA, which became effective January 1, 2009,[5] the regulations now provide that "substantially limits" is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

The ADA states that "reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Reasonable accommodation may involve "[a]n employer or other covered entity . . . restructur[ing] a job by altering when and/or how an essential job function is performed." 29 C.F.R. Pt. 1630, App. at § 1630.2(o). Further, "[r]eassignment to a vacant position" is considered a "potential reasonable accommodation." *Id.*

---

[5] Although Plaintiff began working with USPS before 2009, her allegations concern the time frame subsequent to January 1, 2009. *See, e.g.*, Compl. ¶ 8 (noting 2010 injury).

However, "[a]n applicant for a position must be qualified for, and be able to perform the essential functions of, the position sought with or without reasonable accommodation." *Id.*

A plaintiff has the burden of "identifying an accommodation that would allow a qualified individual to perform the job" and showing "that such an accommodation is reasonable." *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F. App'x 472, 481 (4th Cir. 2010). A reasonable accommodation "does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty.'" *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011). A reasonable accommodation further does not include a reassignment "when it would mandate that the employer bump another employee out of a particular position." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001). The ADA does not require that an employer "promote an individual with a disability as an accommodation." 29 C.F.R. Pt. 1630, App. at § 1630.2(o). An employer is also not bound to "create a new position as an accommodation to a disabled employee." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002).

Plaintiff claims that her neck pain and radiculopathy and her restrictions from carrying more than 20 pounds and from frequent neck flexion are impairments that substantially limit her from "performing a major life function, *i.e.*, work." Compl. ¶ 8, ECF No. 1. She avers that she "repeatedly requested light duty[,]" but Defendant has "repeatedly failed to accommodate [her] by granting her light duty or other reasonable accommodation." *Id.* ¶ 9.

Defendant argues it is entitled to summary judgment because Plaintiff is not a "qualified individual" under the Rehabilitation Act. Def.'s Mem. 20-21, ECF No. 28-1. The Rehabilitation Act defines a "qualified individual" as follows:

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

Defendant proffers the USPS Qualification Standards of the position Plaintiff held—that of Mail Processor/Clerk, ECF No. 28-3,[6] and argues Plaintiff is not a "qualified individual" because she cannot perform the "essential functions" of her Mail Processor/Clerk position with the USPS, either with or without accommodation. *Id.*

Federal regulations explain that "essential functions" are "the fundamental job duties of the employment position that the individual with the disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Evidence of whether a particular job function is essential may include, *inter alia*, written job descriptions prepared before interviewing applicants for the job, the employer's judgment as to which functions are essential, and the work experience of past employees in the position or similar positions. 29 C.F.R. § 1630.2(n)). Plaintiff "bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation." *Fleetwood v. Harford Sys., Inc.*, 380 F. Supp. 2d 688, 697 (D. Md. 2005) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)). Importantly, the ADA "does not require an employer to reallocate essential job functions or assign an employee permanent light duty." *Crabill*, 423 F. App'x at 323 (citation and internal quotation marks omitted).

---

[6] The "physical requirements" portion of the Mail Processor/Clerk job description provides: Applications must be physically able to efficiently perform the duties of the position, which require arduous exertion involving prolonged standing, walking, bending, and reaching, and may involve the handling of heavy containers of mail and parcels weighing up to 70 pounds.
USPS Qualification Standards, Mail Processing Clerk, copy available at ECF No. 28-3.

Plaintiff concedes she would be unable to return to her position as Mail Processor/Clerk. Pl. Dep. 109, ECF No. 28-2. When asked at deposition whether there was anything USPS could do to permit her to return to that position, Plaintiff posited she potentially could perform a portion of her duties sitting in a chair at a specific height. *Id.* She conceded, however, that she would not be able to perform portions of her duties while seated, nor could she think of accommodations other than sitting that would permit her to perform all of those functions. *Id.* at 109-11. Plaintiff did note she could do other jobs for USPS, including hand-sorting of mail. *Id.* at 107. Plaintiff testified that she could perform functions of limited/light duty, which she had often requested. *See, e.g.*, Pl. Dep. 74, 113.

In response to Defendant's Motion, Plaintiff briefly argues that Defendant overstates the decision in *Crabill*. Plaintiff agrees *Crabill* does stand for the proposition that the ADA cannot compel an employer to create a job where none exists; however, she submits *Crabill* "does not mean that light duty can never be a reasonable accommodation." Pl.'s Mem. 10, ECF No. 36. Further, Plaintiff submits Defendant has focused its argument erroneously on the functions of Plaintiff's position as Mail Processor/Clerk.

Plaintiff argues that reassignment to another position can be a reasonable accommodation, attaching an undated "Questions and Answers" sheet from the EEOC that recognizes "reassignment" as an appropriate reasonable accommodation. Pl.'s Mem. 10-11, ECF No. 36; EEOC Q&As, ECF No. 36-4. She concludes this portion of her brief by re-acknowledging that she cannot perform her duties as Mail Processor/Clerk and then posing this seemingly rhetorical question: "The question remains, was there a position to which she could be transferred?" Pl.'s Mem. 11.

Again, Plaintiff's argument misses the mark and ignores her burden. Although reassignment could be an appropriate accommodation, "reasonable accommodation" does not require an employer to reassign the qualified individual to a position occupied by another employee or to create a position when none exists. *See generally Sara Lee Corp.*, 237 F.3d at 355 (finding reassignment not reasonable accommodation when it would require the employer to "bump another employee out of a particular position"); *Lamb v. Qualex*, 33 F. App'x at 59 (finding employer not required to "create a new position as an accommodation to a disabled employee"). Further, the burden is on Plaintiff to identify an accommodation that would permit her to perform her job. *See Shin*, 369 F. App'x at 481.

The only record evidence regarding the availability of jobs Plaintiff could perform is from Defendant. *See, e.g.*, Jan. 18, 2011 Mem. to Pl. from Christensen, Admin. Rec. 107; ECF No. 28-13 (informing Plaintiff that USPS did "not have any duties to offer [her] that would fall within [her] physical limitations" at that time); Feb. 28, 2011 Mem. to Pl. from Christensen, Admin. Rec. 108; ECF No. 28-14 (same); Mar. 28, 2011 Mem. to Pl. from Christensen, Admin. Rec. 00117, ECF No. 28-15 (same). Plaintiff has provided no evidence of other positions or duties Defendant has available that she could perform. To simply assert that questions of fact exist regarding whether such positions or duties might exist is insufficient to carry her burden. *See, e.g., Williams v. United Parcel Servs., Inc.*, C/A No. 2:10-1546-RMG, 2012 WL 601867 (D.S.C. Feb. 23, 2012) (noting burden on plaintiff to identify available accommodation and discussing details of various other positions with defendant that plaintiff submitted should have been made available to him).

Plaintiff admits both that she cannot perform her duties as Mail Processor/Clerk and that there is no accommodation the USPS can make that would allow her to perform her job as Mail

24

Processor/Clerk. *See* Pl. Dep. 110, ECF No. 28-2.[7] Further, Plaintiff has not presented evidence of other positions with tasks she could perform. Accordingly, Plaintiff cannot demonstrate that she is a "qualified individual with a disability," that is, she cannot demonstrate that she can perform the essential functions of her job or another available position with Defendant with or without reasonable accommodation. The undersigned recommends Defendant's Motion for Summary Judgment be granted as to Plaintiff's Rehabilitation Act cause of action.[8]

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment, ECF No. 28, be *granted* and Plaintiff's action be dismissed.

IT IS SO RECOMMENDED.

May 16, 2013                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[7] Plaintiff argues that her admission that she knew of no accommodation Defendant could make to permit her to be a good "sweeper" or "feeder," Pl. Dep. 110, is not "an admission that there were no duties of any kind that she could perform." Pl.'s Mem. 6. However, Plaintiff must establish more than there *may* be *some* duties of *some* kind that she could perform. As discussed above, Plaintiff has not satisfied her burden of identifying reasonable accommodations—including reasonable, available alternative positions.

[8] Because it is recommended that Plaintiff's Rehabilitation Act cause of action be dismissed as a matter of law based on Defendant's first argument, the court need not consider Defendant's argument that Plaintiff did not have a "disability" for purposes of the Rehabilitation Act. *See* Def.'s Mem. 21-23. The court notes, however, that the ADAAA's more liberal definition of whether one is "disabled" applies as of January 1, 2009, when the events at issue took place. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 151-52 (4th Cir. 2012) (noting ADAAA did not apply retroactively).